IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KARL HANKEY,

                        Plaintiff,

    v.

ANDREW SAUL,
Commissioner of Social Security,

                        Defendant.

OPINION AND ORDER

19-cv-136-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Karl Hankey is seeking review of a final decision denying his claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). (I have amended the caption to reflect the fact that Andrew Saul is the new Commissioner of Social Security.) Plaintiff seeks a remand of that decision, arguing that the administrative law judge who decided the case: (1) improperly interpreted the results of plaintiff's most recent magnetic resonance imaging studies and did not consider those studies and related treatment notes in weighing his treating physician's opinion; (2) incorrectly determined that plaintiff did not have a severe impairment of migraine headaches; and (3) failed to account properly for mental health limitations assessed by the state agency psychologists and consultants. For the reasons explained below, I am not persuaded by plaintiff's arguments. Therefore, I will affirm the Commissioner's decision.

The following facts are drawn from the administrative record (AR).

FACTS

Plaintiff Karl Hankey was born on June 29, 1982, making him 31 at the time he filed for disability benefits on June 2, 2014. He alleged that he had been disabled since January 1, 2006 because of numerous physical and mental impairments, including bipolar disorder, fibromyalgia, acid reflux, back problems, dysplasia, thoracic outlet syndrome and stomach lesions. He claims that most of his symptoms began after he was exposed to bear repellant at work in 2006. AR 13, 24, 391.

After his applications were denied initially on January 14, 2015, and upon reconsideration on July 2, 2015, plaintiff filed a request for an administrative hearing. AR 13. On December 22, 2017, Administrative Law Judge Wayne Ritter held a hearing at which plaintiff and a vocational expert testified. Plaintiff was represented by counsel at the hearing. Id.

The administrative law judge issued a written decision on February 6, 2018, finding that plaintiff was severely impaired by chronic pain syndrome, fibromyalgia and depressive disorder. AR 16, 39. He did not find that plaintiff's migraines were a severe impairment, noting that imaging did not show any underlying abnormality; plaintiff's examining providers did not observe a consistent lack of alertness or other abnormalities suggestive of severe migraines; and plaintiff responded generally well to conservative treatment in the form of medications. The administrative law judge noted that despite plaintiff's complaints about constant migraines since his alleged disability onset date, he was able to work at Goodwill for more than three years. AR 18. The administrative law judge also determined that

plaintiff was not severely impaired by thoracic outlet syndrome because testing in 2009 and 2010 failed to show any evidence of the condition and plaintiff did not yet have a definitive diagnosis. Id. (citing AR 1062 (January 2010 computed tomography of chest was normal); AR 1065 (no definitive tests documenting condition at December 2009 visit with surgeon); AR 1067 (December 28, 2009 venogram showed no compromise of venous flow)). See also AR 53-54 (plaintiff's attorney stated at hearing that plaintiff had no definitive studies or diagnosis of thoracic outlet syndrome).

The administrative law judge further found that plaintiff retained the residual functional capacity to perform medium work with the following limitations: simple, routine and repetitive tasks; no fast-paced work; and only work requiring simple work-related decisions, occasional workplace changes and occasional interaction with co-workers, supervisors and the public. AR 23. He also noted that a person of plaintiff's age would not be found disabled even if he was capable only of light or sedentary work with the same additional mental and social limitations set forth in the residual functional capacity assessment. AR 30.

In reaching his decision, the administrative law judge found plaintiff's reported symptoms to be "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 34. With respect to the opinion evidence regarding plaintiff's physical abilities, the administrative law judge stated that he gave great weight to the opinions of the state reviewing physicians Dr. George Walcott (January 12, 2015 initial level of review) and Dr. Ronald Shaw (June 23, 2015

3

reconsideration level of review), who found that plaintiff was capable of the full range of medium level work. AR 32-33 (citing AR 127-28, 143-44). However, the administrative law judge gave little weight to the December 12, 2017 opinion of plaintiff's treating physician, Dr. Kenechi Anuligo, who assessed significant limitations for plaintiff that, if followed, would mean that plaintiff could not perform basic work activities when experiencing a headache, which allegedly occurred 22 hours a day, seven days a week. AR 33 (citing AR 1442-47).

The administrative law judge also considered five somewhat conflicting psychological opinions regarding plaintiff's mental abilities and gave them varying weight. All but one of the opinions were issued by state agency psychologists. AR 34-36. He gave partial weight to the mild to moderate limitations assessed by state reviewing psychologist Dr. Esther Lefevre on January 14, 2015, AR 112-13; great weight to the predominant moderate limitations assessed by state reviewing psychologist Dr. Michael Cremerius on June 26, 2015, AR 141-42; great weight to the mild-to-moderate limitations assessed by consultative examiner Dr. Brenda Reed on September 27, 2014, AR 723-27; some weight to the April 29, 2013 opinion of consultative examiner Dr. Catherine Bard, AR 591; and some weight to the mild limitations assessed by plaintiff's treating nurse practitioner, Marlene Bryan, in May 2014, AR 647-49. (The administrative law judge made several specific findings related to these opinions, which I discuss in more detail below.)

The administrative law judge determined that plaintiff could not perform his past relevant work as an industrial truck operator and cashier checker. AR 37. Relying on the

4

testimony of a vocational expert who testified in response to a hypothetical question based on plaintiff's residual functional capacity assessment, the administrative law judge found that jobs existed in significant numbers in the national economy that plaintiff could perform, including stock clerk and order filler, general office clerk and housekeeper. AR 39. The administrative law judge also noted that the vocational expert testified that a significant number of jobs existed at the light and sedentary exertional levels for individuals with the same non-exertional limitations that plaintiff had. Id.

OPINION

In reviewing the administrative law judge's decision with respect to these arguments, I must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision." Id. The administrative law judge must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination." Id. See also Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).

Plaintiff contends that the administrative law judge erred in three key ways: (1) improperly interpreting the results of plaintiff's most recent magnetic resonance imaging studies and not considering those results and related treatment notes in weighing the opinion of his treating physician, Dr. Anuligo; (2) incorrectly determining that plaintiff did not have the severe impairment of migraine headaches; and (3) failing to account properly for mental health limitations assessed by the state agency psychologists and consultants.

### A. Magnetic Resonance Imaging Studies and Dr. Anuligo's Opinion

Plaintiff takes issue with the administrative law judge's assessment of his two most recent imaging studies. On November 19, 2015, plaintiff underwent a magnetic resonance imaging study of the lumbar spine, which showed L5-S1 disc bulging, moderate facet degenerative change (right greater than left) and a new finding of a right-sided facet cyst, which did not appear to impress upon the existing right L5 nerve root. AR 1415-16. Also noted were multilevel discs bulging with no focal protrusion or herniation and multi-level mild-moderate facet degenerative changes with the most prominent finding at L5-S1. AR 1416. In addition, plaintiff had a magnetic resonance imaging study of his cervical spine on January 7, 2016, which revealed "small central disc protrusions [at] C3-C4 and C4-C5" with minimal canal compression and no significant foraminal narrowing. AR 1419-20. In his written decision, the administrative law judge summarized the results of these studies, as well as plaintiff's earlier, unremarkable imaging studies from 2009 and 2014.

1. Mischaracterization of study results

In an initial argument, plaintiff argues that the administrative law judge mischaracterized the degenerative changes in the 2015 study as mild instead of "mild-moderate," did not note the existence of a cyst in his lumbar spine and incorrectly referred to his cervical herniations as protrusions. However, the administrative law judge did not err in any of these respects. He specifically noted that the 2015 imaging study revealed "multilevel mild-to-moderate facet degenerative changes." AR 20. After summarizing all of the imaging evidence from 2009 to 2016, the administrative law judge wrote that "*[o]verall*, this imaging showed *relatively mild* abnormalities of the lumbar spine and cervical spine." AR 20 (emphasis added). However, it is reasonable to interpret that statement as referring to the results of all of plaintiff's imaging studies, not just the 2015 study. Nothing else in the administrative law judge's opinion suggests that he ignored the multilevel mild-to-moderate facet degeneration in plaintiff's lumbar spine.

Plaintiff is correct that the administrative law judge did not specifically mention the existence of the lumbar cyst in the 2015 study, but he was not required to do so, particularly because the cyst, which did not impose on a nerve root, did not appear to be causing plaintiff any problems. Simila v. Astrue, 573 F.3d 503, 516 (7th Cir. 2009) ("ALJ is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to [his] conclusions."). Finally, plaintiff points out that although anesthesiologist Dr. Jeffrey Follansbee, whom plaintiff saw at the pain clinic for low back pain on December 15, 2016, wrote in a progress note that the 2016 cervical imaging study showed cervical

7

"herniations," AR 876, the actual imaging report used the term "protrusions" and not "herniations." AR 1420.

Without more, plaintiff cannot show that either the administrative law judge's use of the terms "relatively mild" and "protrusions" or his failure to mention the cyst is a mischaracterization of the record that rises to the level of reversible error. Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010) ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, [courts] give the opinion a commonsensical reading rather than nitpicking at it.").

2. Studies post-dating state agency physician opinions

Although none of plaintiff's providers assessed any particular limitations related to his most recent imaging studies, plaintiff contends that the record must be evaluated to determine whether the November 2015 and January 2016 imaging results undermine the January and June 2015 state agency physician opinions that plaintiff is capable of medium-level work. However, plaintiff has failed to argue or explain how the more recent imaging studies would affect the administrative law judge's conclusion or why the studies are evidence that he could not perform a limited range of medium, light or sedentary work. Summers v. Berryhill, 864 F.3d 523, 527 (7th Cir. 2017) ("[It is claimant's] burden, not the ALJ's, to prove that [he] was disabled."); Buros v. Berryhill, No. 17-cv-707-jdp, 2018 WL 2016856, at *3 (W.D. Wis. May 1, 2018) (although recent record showed claimant had uncontrolled diabetes, claimant failed to meet burden of explaining how it was disabling).

As the Commissioner argues, the administrative law judge found that a person of plaintiff's age would not be found disabled even if he was capable of only light or sedentary work with similar mental and social limitations. AR 30, 39 (noting that vocational expert testified that significant number of jobs existed at light and sedentary exertional levels for individual with same non-exertional limitations as plaintiff). Therefore, even if the imaging studies somehow demonstrated a reduction in plaintiff's abilities, the result in this case would be no different.

3. Dr. Anuligo's opinion

On December 12, 2017, Dr. Anuligo completed a medical source statement regarding plaintiff's headaches and physical work capacity, assessing plaintiff with severe limitations such as no walking without pain or rest, unscheduled breaks every 15 minutes, only occasionally lifting less than 10 pounds and less than occasional handling and fingering. AR 1442-47. The administrative law judge gave the report little weight, noting that Dr. Anuligo incorrectly listed thoracic outlet syndrome as one of plaintiff's diagnoses, imaging did not reveal any abnormalities that explained plaintiff's migraines or justified such severe limitations; Dr. Anuligo treated plaintiff's conditions conservatively; and plaintiff's migraines had improved with medication on multiple occasions. AR 33. See also 20 C.F.R. §§ 404.1527(c)(3)-(4) (relevant factors in weighing treating physician opinion include consistency with evidence); Givens v. Colvin, 551 Fed. Appx. 855, 861 (7th Cir. 2013) ("An

9

ALJ may discount even a treating physician's opinion if it is inconsistent with the medical record.").

Plaintiff does not challenge any of the reasons provided by the administrative law judge. Rather, he states that even though the inconsistencies cited by the administrative law judge "merit not giving this opinion controlling weight, weight must still be determined consistent with the regulations and the regulatory factors." Dkt. #9 at 20. Specifically, plaintiff contends that because the 2015 and 2016 imaging results were "likely available to [Dr.] Anuligo," who was "the only doctor to have rendered an opinion after the [imaging studies]," remand is necessary for "reconsideration of Dr. Anuligo's opinion in light of the MRIs and a reevaluation of the weight to be afforded to his opinion." Id. at 21-22. However, the administrative law judge considered both Dr. Anuligo's report and the most recent magnetic resonance imaging studies, and, as discussed above, neither Dr. Anuligo nor plaintiff explained how the studies supported the extreme limitations assessed by Dr. Anuligo. Without more, plaintiff cannot show that the administrative law judge erred in giving little weight to the restrictions assessed by Dr. Anuligo. Stepp v. Colvin, 795 F.3d 711, 718 (7th Cir. 2015) ("We uphold all but the most patently erroneous reasons for discounting a treating physician's assessment.") (internal quotation omitted).

### B. Migraines

In a brief argument, plaintiff contends that the administrative law judge's finding that his migraines are not a severe impairment is "suspect" in light of Dr. Follansbee's

"conjecture" that there was a relationship between plaintiff's small cervical herniated disks and his headaches. In his December 15, 2016 progress report, Dr. Follansbee noted that plaintiff had "[c]ervical neck pain. Two cervical herniated disks C3-4, C4-5. Intermittent occipital headaches." AR 878. Contrary to plaintiff's contention, Dr. Follensbee did not state an opinion on the link between plaintiff's cervical imaging results and his migraine headaches. Although plaintiff says that the case should be remanded to address a *possible* causal link between plaintiff's cervical spine issues and migraines, he has not met his burden of showing how such a link would change the administrative law judge's conclusion or result in any further limitations. Summers, 864 F.3d at 527; Buros, 2018 WL 2016856, at *3.

In any event, the administrative law judge recognized that even though plaintiff attributed his migraines to his neck problems, he cancelled and did not reschedule the epidural neck injections he was supposed to receive for his neck pain in August 2017 because he had to provide care to his girlfriend who was recovering from surgery. AR 28, 252. The administrative law judge reasonably concluded that plaintiff's failure to follow through with the injections was inconsistent with his allegations of severe and disabling pain, particularly because receiving an injection was unlikely to require a significant amount of time or recovery that would detract from his caretaking responsibilities.

In addition, the administrative law judge considered plaintiff's reported history of migraines and complaints of daily migraines but noted that plaintiff had continued to work with allegedly constant migraines for at least three years, his previous imaging studies did not show any underlying abnormality to explain the migraines, his health care providers did

11

not consistently observe a lack of alertness or other abnormalities suggesting severe migraines, he had never seen a neurological specialist and he required only conservative treatment and responded well overall to medication. AR 18. Plaintiff has not challenged any of these findings or otherwise shown that the administrative law judge erred in considering the evidence regarding his migraines. Accordingly, plaintiff has not shown any ground for remand with respect to the consideration of his migraines.

### C. Mental Limitations

Plaintiff asserts that the administrative law judge erred by (1) ignoring findings made by Dr. Bard (consultative examiner in 2013) and Dr. Lefevre (reviewing psychologist at initial level) regarding his possible somatoform disorder; and (2) not adequately accounting for certain limitations assessed by Dr. Cremerius (reviewing psychologist at reconsideration level) in his hypothetical question to the vocational expert.

#### 1. Somatoform disorder

On April 29, 2013, Dr. Bard performed a mental status examination of plaintiff. AR 591. She diagnosed depressive disorder and somatization disorder (a form of somatoform disorder) and noted that he was exhibiting serious levels of psychologically-based symptoms that mimicked medical issues. AR 595. Dr. Bard stated the opinion that plaintiff was able to follow basic instructions, get along well with supervisors and coworkers and maintain adequate attention and focus, but his work pace was because of problems with attendance

because of pain, he deals with changes in a variable way and he handles small stressors poorly. AR 594. The administrative law judge found that Dr. Bard relied too much on plaintiff's subjective complaints and areas outside her medical expertise in stating an opinion about the psychological effects of plaintiff's pain and physical impairments.

Contrary to plaintiff's contention, the administrative law judge did not ignore Dr. Bard's finding that he has somatization disorder. The administrative law judge noted Dr. Bard's diagnosis and the limitations associated with it. AR 30, 35. In addition, before weighing Dr. Bard's opinion, the administrative law judge determined that plaintiff's somatoform disorder did not rise to the level of a severe impairment because he required no treatment for the condition during the relevant period. AR 16. Finally, it is worth noting that no other provider appears to given plaintiff a definitive diagnosis of somatoform disorder or assessed him limitations associated with the condition, including Dr. Reed, who reviewed Dr. Bard's report and performed a consultative examination of plaintiff on September 27, 2014, and nurse practitioner Bryan, who treated plaintiff between the fall of 2013 and summer of 2014. AR 689-714.

Plaintiff also criticizes the administrative law judge for disregarding a statement that state reviewing physician Dr. Lefevre made about his "possible" somatic disorder during the initial level of review in January 2015. Dr. Lefevre noted that plaintiff had several moderate limitations, including in his ability to complete a normal workday and workweek without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable amount of rest periods. AR 116. In a narrative explanation following those

limitations, Dr. Lefevre wrote "[c]lmnt has dx of Mood D/O (NOS), along with Substance Abuse D/O and possible Somatic D/O. ADL's claim many limits to functioning. Psych CE Report does assign some mild/moderate limits with regard to remembering instructions and working around others." Id. Plaintiff speculates that Dr. Lefevre's findings regarding completing a normal workday and performing at a consistent pace "may have been based upon the potential somatic disorder noted by Dr. Bard" and "the disregard of such a consideration . . . appears unsupported." Dkt. #9 at 28. I am not persuaded by plaintiff's reasoning.

Dr. Lefevre's narrative statement did not attribute any specific limitation to plaintiff's possible somatic disorder and made it clear that plaintiff had definitive diagnoses of mood and substance abuse disorders. Contrary to plaintiff's contention, the administrative law judge specifically addressed Dr. Lefevre's limitations regarding plaintiff's work pace and ability to complete a workday, finding that they were "undermined" by plaintiff's generally good clinical findings, conservative treatment and ability to perform semiskilled work during the relevant period. AR 34-35. Plaintiff has not challenged that reasoning or shown that his possible somatoform disorder supported any particular limitation. In fact, the administrative law judge's finding is consistent with the opinion of Dr. Cremerius, who reviewed the record at the reconsideration level in June 2015, and found that plaintiff did not have significant limitations in completing a workday or performing at a consistent pace. AR 145. In addition, as discussed above, the administrative law judge addressed plaintiff's

possible somatoform disorder and provided sound reasons for not adopting it as a severe impairment.

In sum, even if the administrative law judge could have given more weight to Dr. Bard's opinion about the psychological effects of plaintiff's physical conditions and to Dr. Lefevre's moderate limitations regarding plaintiff's work pace and completion of a workday, he did not ignore the physicians' findings and provided good reasons for discounting them. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993) (where conflicting evidence allows reasonable minds to reach different conclusions about claimant's disability, decision falls on Commissioner).

2. Dr. Cremerius's limitations

At the reconsideration level of review in June 2015, Dr. Cremerius found that plaintiff had moderate limitations in several areas, including interacting appropriately with the public, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, working in coordination with or in proximity to others without distraction and responding appropriately to changes in the work setting. AR 145-46. In the narrative section related to social limitations, the doctor explained that plaintiff would be limited to occasional contact with co-workers and supervisors and only incidental contact with the public. Id. In the narrative sections relating to understanding and memory, adaptation and concentration, persistence or pace, Dr. Cremerius wrote that plaintiff could understand and remember

15

simple and detailed instructions but not complex instructions, could perform simple and detailed tasks but not complex tasks and could not perform fast-paced tasks with strict production quotas but "variable paced tasks with end of day production quotas would be acceptable." AR 145-46. The administrative law judge summarized these findings and gave great weight to Dr. Cremerius's overall opinion. AR 35.

Plaintiff contends that the administrative law judge erred in failing to explain why he did not include three of Dr. Cremerius's limitations in his residual functional capacity assessment and the resulting hypothetical question to the vocational expert: (1) incidental contact with public; (2) moderate limitations in working in coordination with or in proximity to others without being distracted by them; and (3) ability to perform variable-paced tasks and end of day production quotas. For the reasons below, I find that the administrative law judge's failure to adopt these specific limitations does not qualify as reversible error.

First, although plaintiff is correct that the administrative law judge limited him to occasional rather than incidental contact with the public, the administrative law judge provided a specific reason for his decision. He reasonably noted that the medical records generally described plaintiff as cooperative, which suggested that plaintiff could have more than incidental public contact. AR 32, 35. The administrative law judge also reasonably pointed out that plaintiff was able to work for several years after his alleged onset date.

Second, plaintiff argues that having a moderate difficulty in working in coordination with or in proximity to other without being distracted by them should correspond to a

limitation of no tandem tasks, group projects or work teams. However, plaintiff cites no support for that view apart from his own speculation. Dr. Cremerius and the other psychologists did not make any findings with respect to plaintiff's ability to perform group or tandem work. In fact, Dr. Cremerius concluded that, although plaintiff had several moderate concentration difficulties, he was capable of performing simple and detailed tasks and would be limited only to occasional interaction with co-workers. The administrative law judge was entitled to rely on Dr. Cremerius's conclusion. Burmester v. Berryhill, 920 F.3d 507, 511 (7th Cir. 2019) ("[A]n ALJ may reasonably rely on the opinion of a medical expert who translates [moderate limitations] into an RFC determination."); Saunders v. Saul, 777 Fed. Appx. 821, 825 (7th Cir. 2019) ("The ALJ was entitled to credit [state agency psychologist's] opinion and include in her hypothetical most of the restrictions he identified.").

Finally, plaintiff argues that the administrative law judge failed to account properly for Dr. Cremerius's work pace limitations for plaintiff because he failed to address the doctor's statement that "variable paced tasks with end of day production quotas would be acceptable." Although plaintiff does not clearly explain his reasoning, he seems to believe that Dr. Cremerius intended plaintiff to perform tasks at a "worker-driven" pace rather than a "work-driven" pace and that the administrative law judge erred in failing to address that distinction. However, as the Commissioner notes, Dr. Cremerius limited plaintiff to no fast-paced tasks with strict production quotas, for which end-of-day production quotas would be acceptable. In the residual functional capacity assessment, the administrative law judge

17

precluded *all* fast-paced work for plaintiff, rather than placing any limit on the type or amount of quotas he could meet. Therefore, plaintiff has not shown that the administrative law judge erred in translating Dr. Cremerius's pace limitations.

Accordingly, I am affirming the Commissioner's decision denying benefits and dismissing plaintiff's appeal.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Karl Hankey's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 20th day of March, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge